IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

KEVIN OGDEN,

    Petitioner,

v.                                                                      1:22-cv-00801-JCH-JMR

ATTORNEY GENERAL FOR THE
STATE OF NEW MEXICO, PENITENTIARY
OF NEW MEXICO SOUTH, and CHARLENE
HAGERMAN, *Warden*,

    Respondents.

## **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER comes before the Court on Kevin Ogden's Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus. Doc. 9. The Court dismissed Mr. Ogden's civil rights claims under 42 U.S.C. § 1983 and ordered respondents to answer the remaining § 2241 claims. Doc. 10. Respondents filed a timely answer. Doc. 13. Mr. Ogden filed a timely reply. Doc. 15. The Honorable Senior District Judge Judith C. Herrera referred the case to me pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (b)(3) to conduct hearings, if warranted, and to perform any legal analysis required to recommend to the Court an ultimate disposition of this case. Doc. 11. Having reviewed the parties' submissions and the relevant law, I recommend that the Court deny Mr. Ogden's petition with prejudice.

**I.**     **Background**

On November 1, 1994, a jury in the Eleventh Judicial District of the State of New Mexico found Mr. Ogden guilty of first-degree murder and three counts of possession of a firearm by a felon. Doc. 13-1 at 1–2 (Exh. A). Mr. Ogden was sentenced to a term of life imprisonment, plus six consecutive years to be followed by a minimum five-year parole period. Doc. 13-1 at 10–12

(Exh. B).¹ Mr. Ogden received pre-sentence confinement credit of twenty-seven months and twenty-three days. *Id.*

Throughout his petition, Mr. Ogden claims that his life sentence is actually a thirty-six-year sentence.² Doc. 9 at 5. He is incorrect. Doc. 13-1 at 10–12 (Exh. B). At other times in the same petition, he acknowledges that he was sentenced to life. Doc. 9 at 17 ("Petitioner fails to see why he received a life sentence.").

## II.    Mr. Ogden's § 2241 Petition

On March 17, 2023, Mr. Ogden filed a timely Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus with this Court. Doc. 1; *see also* 28 U.S.C. § 2244(d)(1)(A). On October 24, 2023, Mr. Ogden filed an amended §2241 petition, as ordered by the Court. Docs. 8, 9. In the amended petition, Mr. Ogden argues four grounds for relief:

1. He is being denied twenty-nine years of good time credit in violation of his right to due process.

---

¹ Initially, the date Mr. Ogden became eligible for parole was incorrectly calculated as October 30, 2024. Doc. 13-1 at 44–45 (Exh. E). On August 9, 2011, his parole eligibility date was corrected to July 5, 2022. *Id.* at 10–12 (Exh. B) (Corrected Judgment and Sentence).

Mr. Ogden argues that the "Corrected Judgment and Sentence is not a valid legal document," because he cannot identify the judge who signed it, and it was amended almost seventeen years after he was sentenced. Doc. 15 at 2. While the signature line does not identify the signing judge, the docket sheet (Doc. 13-1 at 93 (Exh. O)) indicates that the Honorable John Dean, Jr. (Ret.) issued the order. Regardless, neither of these arguments invalidate the legal force of the Corrected Judgment and Sentence.

² Mr. Ogden does not explain why he sometimes refers to his life sentence as lasting thirty-six years. Perhaps, Mr. Ogden is referring to the minimum amount of time he would have to spend in custody if he was immediately granted parole. *See* N.M. Stat. Ann. § 31-21-10 (requiring that people sentenced to life imprisonment serve at least thirty years of their sentence before becoming eligible for parole); *see also* Doc. 13-1 at 10–12 (Exh. B) (noting that Mr. Ogden was sentenced to life in prison, plus six consecutive years). The reason is ultimately immaterial.

2. The New Mexico Supreme Court case *Compton v. Lytle* was wrongly decided and does not apply to him.

3. New Mexico Statute § 31-21-10(A) violates the Equal Protection Clause by discriminating against people with life sentences.

4. New Mexico Statute § 33-2-34(G) is an unconstitutional ex post facto law as applied to him.

Doc. 9 at 2–17.

Mr. Ogden exhausted these claims in state court. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court."); *see also Montez v. McKinna*, 208 F.3d 862, 866 (10th Cir. 2000) ("A habeas petitioner is generally required to exhaust state remedies whether his action is brought under § 2241 or § 2254."). On August 20, 2021, Mr. Ogden filed a *pro se* state petition for writ of habeas corpus where he argued each of the grounds above, as well as several others. Doc. 13-1 at 13–23 (Exh. C). The state district court denied the petition stating, "it plainly appears from the face of the petition that the Petitioner is not entitled to relief as a matter of law." *Id.* at 59–60 (Exh. J). On March 9, 2022, Mr. Ogden filed a *pro se* petition for a writ of certiorari to the New Mexico Supreme Court where he made the same argument for relief. *Id.* at 61–77 (Exh. K). On March 29, 2022, the New Mexico Supreme Court denied Mr. Ogden's petition for a writ of certiorari without reasoning. *Id.* at 13-1 at 81 (Exh. L). Then, Mr. Ogden filed a "Motion for Rehearing" with the New Mexico Supreme Court. *Id.* at 83–88 (Exh. M). The New Mexico Supreme Court denied the motion on July 6, 2022. *Id.* at 91 (Exh. N). Because Mr. Ogden "properly presented to the highest state court" his federal claims, he has exhausted the claims. *See Dever v. Kansas State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994) (citation omitted).

### III.    Standard of Review

A state petitioner challenging the execution of his sentence brings his claims under 28 U.S.C. § 2241. *Yellowbear v. Wyoming Atty. Gen.*, 525 F.3d 921, 924 (10th Cir. 2008). In relevant part, the Court may grant the writ if the petitioner shows that, "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The standard of review is *de novo*. *Walck v. Edmonson*, 472 F.3d 1227, 1235 (10th Cir. 2007).

However, this Court "still accord[s] deference to the [state court's] determination of the federal constitutional issue." *Henderson v. Scott*, 260 F.3d 1213, 1215 (10th Cir. 2001). In other words, "the deferential standard of § 2254(d) still applies [where the] challenge was first heard in a state habeas petition." *Gonzales v. Bravo*, No. CV 10-469- JB-GBW, 2011 WL 13291143, at *2 (D.N.M. Feb. 25, 2011) (collecting cases applying § 2254(d)'s deferential standard of review to § 2241 petitions). Notably, "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991).

Finally, pleadings by *pro se* litigants are "to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). That means "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. . . ." *Id.* Still, a court may not "assume the role of advocate for the *pro se* litigant." *Id.*

### IV.    Discussion

Mr. Ogden fails to show that any of his four grounds entitle him to habeas relief. Each of Mr. Ogden's grounds for relief have been litigated by other petitioners in either the Tenth Circuit

4

or the New Mexico Supreme Court, and like those courts found, I find that the petitioner here is not entitled to relief.

### A. Legal Background

Mr. Ogden was sentenced in November of 1994 for his four felony crimes. Doc. 13-1 at 92–94 (Exh. O). At the time, New Mexico Statute § 33-2-34 provided that, "[a]*ny inmate confined in the penitentiary of New Mexico*" is eligible for good time credits. N.M. Stat. Ann. § 33-2-34(A) (1994) (emphasis added). In seeming contradiction, New Mexico Statute § 31-21-10 required that, "[a]n inmate of an institution who was sentenced to life imprisonment as the result of the commission of a capital felony . . . becomes eligible for a parole hearing after he has served thirty years of his sentence." N.M. Stat. Ann. § 31-21-10(A) (1994).

In *Compton v. Lytle*, the New Mexico Supreme Court resolved this contradiction. *Compton v. Lytle*, 2003-NMSC-031, 134 N.M. 586, 81 P.3d 39. In particular, the court held that the general good time statute (§ 33-2-34) does not override the specific statute (§ 31-21-10), which requires that those serving life sentences only become eligible for parole after thirty years. *Compton*, 2003-NMSC-31, ¶ 16; *see also Litteral v. Marshall*, 437 F. App'x 749, 751 (10th Cir. 2011) (unpublished) (similarly characterizing the holding in *Compton*). The *Compton* court, interpreting federal law, also held that Mr. Compton did not have a protected liberty interest in good time credits that were erroneously granted to him under the general statute § 33-2-34. *Compton*, 2003-NMSC-31, ¶ 23–26 (citing *Stephens v. Thomas*, 19 F.3d 498, 501 (10th Cir. 1994) (holding the same in the context of a different statute). Therefore, Mr. Compton's procedural due process rights were not violated by the revocation of the good time credits. *Id.*

Notably, though not applicable to the facts of the *Compton* decision, in 1999, the legislature clarified this issue by adding subsection G to § 33-2-34, specifically excluding individuals sentenced to life imprisonment from being eligible to earn meritorious sentence deductions. *See* N.M. Stat. Ann. § 33-2-34(G) (1999). The legislature also removed the "any inmate" language from subsection A. *See* N.M. Stat. Ann. § 33-2-34(A) (1999).

### B. Mr. Ogden's procedural due process rights are not violated because he is being denied unearned good time credits (Ground One).

Mr. Ogden claims that he is being denied twenty-nine years of good time credit in violation his right to due process. Doc. 9 at 2–6, 12–17. Mr. Ogden argues that he is entitled to this good time credit under § 33-2-34, as was in effect at the time of his conviction. *Id.* at 4. Respondents argue that he was not denied any good-time credit, and he does not have a protected liberty interest in the unearned credit. Doc. 13 at 8–11. I find that Mr. Ogden did not earn any good time credits, and therefore, does not have a protected liberty interest in those credits.

"A state inmate's due process rights are implicated only when a state's actions impinge on a protected liberty interest." *Stephens*, 19 F.3d at 501 (citing *Vitek v. Jones*, 445 U.S. 480, 788–90 (1980)). "[A] state-created right to good-time credits, which could be forfeited only for serious misbehavior, constitute[s] a liberty interest protected by the Due Process Clause." *Vitek*, 445 U.S. at 488 (citing *Wolff v. McDonell*, 418 U.S. 539 (1974)). However, there is no protected liberty interest in good time credits, to which one is not entitled. *Stephens*, 19 F.3d at 501. In *Stephens*, the Tenth Circuit held that a prisoner sentenced to life, who was statutorily required to

6

serve ten years in prison before becoming eligible for parole, did not have a protected liberty interest in erroneously awarded good time credits during the first ten years of his sentence.[3] *Id.*

Much like Mr. Stephens, Mr. Ogden does not have a protected liberty interest in good time credits to which he is not entitled. *See id.* As respondents point out, the Tenth Circuit decided this same issue in *Woodward v. Heredia*, 341 F. App'x 460, 461–62 (10th Cir. 2009) (unpublished). Doc. 13 at 9–10. Mr. Woodward and Mr. Ogden were each convicted and sentenced to life sentences before *Compton* was decided in 2003. *See Woodward*, 341 F. App'x at 461. Just like Mr. Ogden, on § 2241 review, Mr. Woodward argued that his procedural due process rights were violated because he was not awarded good time credits under the general good time statute § 33-2-34, as was in effect at the time of his conviction. *Id.* Relying on *Compton*, which in turn relied on *Stephens*, the Tenth Circuit held, "Mr. Woodward has no basis for asserting a federal due process claim based on the refusal of corrections officials to apply good time credits to his parole eligibility date." *Id.* at 462. The Tenth Circuit reasoned that Mr. Woodward, just like Mr. Stephens, did not have a protected liberty interest in credits that he was not entitled to have in the first place. *Id.*; *see also Stine v. Fox*, 731 F. App'x 767, 769 (10th Cir. 2018) (unpublished) (also holding that there is not a constitutionally protected liberty interest in unearned good time credits). Mr. Ogden's case is no different.

Because Mr. Ogden has no protected liberty interest in unearned good time credits, his due process claim (Ground One) fails.

---

[3] As explained in *Compton*, until April 15, 1988, the New Mexico Department of Corrections was erroneously awarding good time credit to those sentenced to life imprisonment. *Compton*, 2003-NMSC-031, ¶ 2–3. Mr. Ogden, unlike Mr. Stephens, committed his crimes and was sentenced several years after this error was corrected.

### C. Mr. Ogden's request that this Court overturn *Compton* is not a basis for federal habeas relief (Ground Two).

Mr. Ogden argues that the New Mexico Supreme Court wrongly decided *Compton*, and that regardless, *Compton* does not apply to him. Doc. 9 at 6–8. Respondents state that Mr. Ogden "fails to demonstrate a basis for federal habeas relief." Doc. 13 at 11. I agree with respondents.

First, Mr. Ogden claims that the "Supreme Court of New Mexico commits fraud in *Compton v. Lytle*," because he disagrees with the ruling that § 31-21-10 governs over § 33-2-34. Doc. 9 at 6. However, "it is not the province of a federal habeas court to reexamine state court determinations on state-law questions." *Estelle*, 502 U.S. at 67–68. *Compton* involved a state court interpreting state statutes. *See Compton*, 2003-NMSC-31, ¶ 5–27. In *Litteral v. Marshall*, a petitioner, also sentenced to life, similarly attempted to attack *Compton* on § 2241 review. *Litteral*, 437 F. App'x at 750. The *Litteral* Court also found that, "[w]hether the New Mexico courts have erred in interpreting New Mexico statutes is a purely state law question that we cannot address through federal habeas." *Id.* (citing *Johnson v. Mullin*, 505 F.3d 1128, 1141 (10th Cir. 2007)). Much like I discussed above in section IV.B, the *Litteral* Court held that *Compton*'s "interpretation of state law did not deprive Mr. Litteral of due process." *Id.* Then, it noted that "Mr. Litteral [has not] identified any other federal right that might be affected by *Compton*'s application to him." *Id.* The same is true here as to Mr. Ogden. Mr. Ogden's attack on *Compton* is not a basis for federal habeas relief.

Next, Mr. Ogden argues that *Compton* does not apply to those serving a life sentence, like himself. Doc. 9 at 7. Mr. Compton was initially sentenced to death, and the governor commuted his sentence to life imprisonment. *Compton*, 2003-NMSC-31, ¶ 1. Because Mr. Ogden was not initially sentenced to death, he argues that *Compton* is inapplicable to him. Doc. 9 at 7. He

8

reasons that "[t]he parts about life sentences is in 'dicta.'" *Id.* By *Compton*'s plain language, Mr. Ogden is wrong. *See, e.g.*, *Compton*, 2003-NMSC-31, ¶ 1 ("Because the Legislature has specifically provided that inmates serving life sentences only become eligible for a parole hearing after thirty years, we hold that Petitioner is not eligible for a parole hearing until he has actually served thirty years in prison, his good time credits notwithstanding."). While Mr. Ogden and Mr. Compton received life sentences by way of somewhat different circumstances, the holding in *Compton* is equally applicable to Mr. Ogden.

Mr. Ogden fails to set forth a basis for federal habeas relief in Ground Two.

### D. Mr. Ogden's right to equal protection of law is not violated by § 31-21-10 (Ground Three).

Mr. Ogden next claims that § 31-21-10 violates his right to equal protection of law. Doc. 9 at 8–12. He reasons that § 31-21-10 impermissibly discriminates against the people sentenced to life imprisonment. *Id.* Respondents argue that the Equal Protection Clause is not violated because there is a rational basis for treating those sentenced to life differently.[4] Doc. 13 at 12–13. I agree with respondents.

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. Amend. XIV § 1. However, "[i]n the absence of a fundamental right or membership in a protected class, where the state has a rational basis for treating the classes differently, the Equal Protection Clause is not violated." *Stephens*, 19 F.3d at 501. "The general rule is that legislation

---

[4] Respondents also argue that people sentenced to life are not similarly situated to those with lesser sentences. Doc. 13 at 12–13. I do not address that argument here because respondents' other argument is dispositive.

is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985).

There is a rational basis for § 31-21-10's discrimination against those sentenced to life. In *Martinez v. New Mexico*, the New Mexico Supreme Court decided this same equal protection argument about the same statute.[5] *Martinez v. New Mexico*, 1989-NMSC-026, 108 N.M. 382, 772 P.2d 1305. The New Mexico Supreme Court held that the Equal Protection Clause was not violated because: "There is a rational and natural basis for confining capital felons to the penitentiary for at least thirty years, and depriving them of meritorious deductions, while at the same time granting noncapital felons the right to seek earlier parole on the basis of meritorious deductions." *Id.* at ¶ 2. The *Martinez* court reasoned that the New Mexico "legislature has determined that the dangerousness of those persons sentenced to life imprisonment necessitates a different type of release program than that used with non-lifers." *Id.* (citation omitted). I agree that there is a legitimate state interest in keeping people sentenced to life incarcerated for a minimum of thirty years before becoming eligible for parole based on their potential dangerousness. Mr. Ogden fails to show that § 31-21-10 is not rationally related to a legitimate state interest.

Therefore, Mr. Ogden's right to equal protection of laws is not violated by § 31-21-10 (Ground Three).

---

[5] Albeit, section 31-21-10 has since been amended, but the relevant provision—that people sentenced to life imprisonment only become eligible for parole after serving thirty years—remains the same. *See* N.M. Stat. Ann. § 31-21-10(A) (1989).

### E. Section 33-2-34(G) is not an unconstitutional ex post facto law as applied to Mr. Ogden (Ground Four).

Mr. Ogden claims that § 33-2-34(G) cannot apply to him because he was charged in 1992 and convicted in 1994, but § 33-2-34(G) was not enacted until 1999. Doc. 9 at 12–15. Respondents argue that because the interpretation of § 33-2-34(G) was foreseeable there is no constitutional violation. Doc. 13 at 14–15. I find that § 33-2-34(G) is not an unconstitutional ex post facto law as applied to Mr. Ogden.

Section 33-2-34—New Mexico's general good time credit statute—subsection G states, "[t]he provisions of this section shall not be interpreted as providing eligibility to earn meritorious deductions from a sentence of life imprisonment. . . ." N.M. Stat. Ann. § 33-2-34(G) (1999).[6]

In his argument, Mr. Ogden conflates two legal principles: (1) that the legislature may not pass ex post facto laws, and (2) that unforeseeable judicial interpretations of a law criminalizing or penalizing conduct may not be retroactively applied. *See* Doc. 9 at 12–15. The former implicates the Ex Post Facto Clause of the United States Constitution. *Lustgarden v. Gunter*, 966 F.2d 552, 553 (10th Cir. 1992) ("The Ex Post Facto Clause is a limitation upon the powers of the Legislature and does not of its own force apply to the Judicial Branch of government.") (citation omitted). The latter implicates the Due Process Clause. *Id.* at 554 ("Petitioner's claims arise out of judicial interpretation of a statute, and therefore, his rights derive from the Due Process Clause."). Mr. Ogden's due process right, or lack thereof, to unearned good time credits is discussed in section IV.B. As such, I focus the discussion to the Ex Post Facto Clause in this section.

---

[6] Section 33-2-34(G) has been amended again since 1999, but the relevant text remains the same.

The United States Constitution provides that "No States shall . . . pass any . . . ex post facto Law." U.S. CONST. Art. 1 § 10, cl. 1; *see also* U.S. CONST. Art. 1 § 9, cl. 3 ("No . . . ex post facto Law shall be passed."). An ex post facto law is one that "imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *Weaver v. Graham*, 450 U.S. 24, 28 (1981) (quotation omitted). For a criminal or penal law to violate the Ex Post Facto clause, it must (1) "apply to events occurring before its enactment" and (2) "disadvantage the offender affected by it." *Id.* at 29.

Here, Mr. Ogden was not disadvantaged by the addition of § 33-2-34(G) because—as explained in *Compton*—when Mr. Ogden committed his offenses, people sentenced to life were already ineligible for good time credits. *See Compton*, 2003-NMSC-31, ¶ 10-13 ("[A] life sentence does not have a determinate maximum sentence to be reduced by good-time credits."). And although not relevant to his ex post facto claim, he was also ineligible when he was criminally charged in 1992, and when he was convicted in 1994.[7] The state of the law did not change for Mr. Ogden when § 33-2-34(G) was added in 1999. Subsection G merely clarified the then-existing state of the law. *See id.* at ¶ 21 (noting that "the Legislature re-enacted Section 33-2-34 in 1999 and clarified that those serving life sentences are not eligible for good-time credits"). As such, Mr. Ogden was not disadvantaged by its passing. *See Weaver*, 450 U.S. at 29.

Mr. Ogden is not entitled to federal habeas relief based on his argument that the § 33-2-34(G) is an unlawful ex post facto law.

## V.     Recommendation

---

[7] The relevant timing for an ex post facto claim is when the offense was committed, not when charged or convicted, as Mr. Ogden argues. *See Weaver*, 450 U.S. at 28.

Mr. Ogden asserts four grounds for relief. He argues that:

1. He is being denied twenty-nine years of good time credit in violation of his right to due process.

2. The New Mexico Supreme Court case *Compton v. Lytle* was wrongly decided and does not apply to him.

3. New Mexico Statute § 31-21-10(A) violates the Equal Protection Clause by discriminating against people with life sentences.

4. New Mexico Statute § 33-2-34(G) is an unconstitutional an ex post facto law as applied to him.

Doc. 9 at 2–17. In conformity with existing case law, each of Mr. Ogden's claims fail on the merits. Therefore, I recommend denying Mr. Ogden's Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus (Doc. 9) with prejudice.

Finally, I recommend that the Court deny Mr. Ogden a Certificate of Appealability because he has not "made a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). Mr. Ogden argues that a Certificate of Appealability is not necessary for a § 2241 petition. Doc. 15 at 1, 9. If Mr. Ogden was a federal prisoner, he would be correct. However, the Tenth Circuit "holds that a state prisoner must obtain a [Certificate of Appealability] to appeal the denial of a habeas petition, whether such petition was filed pursuant to § 2254 or § 2241, whenever 'the detention complained of [in the petition] arises out of process issued by a State court.'" *Montez*, 208 F.3d at 867 (citation omitted). Such is the case here.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). Written objections must be both timely and specific.** *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, **73 F.3d 1057, 1060 (10th Cir. 1996). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. Failure to file**

**timely and specific objections will result in waiver of *de novo* review by a district or appellate court.  *Id.*  In other words, if no objections are filed, no appellate review will be allowed.**

_____
JENNIFER M. ROZZONI
United States Magistrate Judge

14